IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.                                CRIMINAL CASE NO. 2:20-00088

BRIAN KELLY TOWNSEND

**MEMORANDUM OPINION AND ORDER**

Before the court is defendant's motion to suppress all evidence seized from the June 9, 2018 search of his residence and the truck parked within the curtilage of that residence. (ECF No. 23.)  The motion has been fully briefed, and the court held a hearing on August 24, 2020.  At the conclusion of the hearing, the court took the motion under advisement.  For the following reasons, the court hereby **DENIES** defendant's motion.

I.   **Background**[1]

Early in the morning on June 9, 2018, defendant called 911 to report that his girlfriend, Catheria Swafford, had accused him of stealing an iPad.  When the police did not respond by early afternoon, he called a second time and reported that Ms.

---

[1] This background is based upon facts stated in defendant's brief, (ECF No. 23), the government's response, (ECF No. 24), the police report created by Deputy Angelica C. Miller of the Kanawha County Sheriff's Office, (ECF No. 23-3), and upon Deputy Miller's testimony at the pretrial motions hearing.  The court finds Deputy Miller completely truthful and believable, and fully credits her testimony.

Swafford had accused him of stealing an iPad and struck him. Deputy Angelica C. Miller ("Deputy Miller") of the Kanawha County Sheriff's Office responded to defendant's second 911 call. After arriving at defendant's residence, Deputy Miller spoke with Ms. Swafford, who denied that she hit defendant and explained that the iPad was not stolen but was just damaged. Deputy Miller thereafter spoke with defendant in the basement of defendant's residence, where defendant admitted that he had not actually been struck by Ms. Swafford.

During Deputy Miller's conversation with defendant, Deputy Miller found defendant to be "obviously under the influence" of alcohol. Defendant told Deputy Miller that he had been drinking throughout that morning, and Deputy Miller stated that she saw several empty cans of beer in the basement near defendant. Deputy Miller testified that while it was apparent that defendant was intoxicated, he was not slurring his speech and he was responsive to her questions. She also testified that at no point in their encounters at his residence that day did defendant become physically ill or become unsteady and fall due to his intoxication.

After speaking with defendant for the first time, Deputy Miller spoke again with Ms. Swafford. Ms. Swafford told Deputy Miller that she felt afraid of defendant when he was intoxicated, and that she was concerned because he was a

2

convicted felon and was in possession of a firearm. Ms. Swafford told Deputy Miller that the gun's holster and ammunition were inside the residence, and she left and brought those materials to Deputy Miller.

Upon learning this information and receiving the gun holster and ammunition, Deputy Miller went to the basement to speak with defendant a second time. Deputy Miller asked defendant whether he was a felon and whether he possessed a firearm. Defendant answered that he was a felon and had a gun, which he had received in exchange for trading a circular saw to "Billy." Deputy Miller then asked defendant where the gun was, and defendant responded that it was in his truck inside of a black tool bag in the back seat of the truck. Deputy Miller asked where the keys to the truck were, and defendant pulled out the keys to the truck from his pocket and handed the keys to Deputy Miller.

Once she received the keys to defendant's truck, Deputy Miller placed defendant under arrest for filing a false police report, which is a misdemeanor under West Virginia law. Deputy Miller led defendant upstairs and outside to his truck, which was parked on the side of the street in front of defendant's residence. (See ECF No. 27, Exs. D-1 and D-2.) Deputy Miller then used defendant's keys to unlock the truck and she recovered a firearm in a black tool bag in the back seat of the vehicle.

3

Defendant did not say anything while Deputy Miller unlocked his truck and recovered his gun. After seizing the gun, Deputy Miller arrested defendant for being a felon in possession of a firearm.

At no point in the interaction between Deputy Miller and defendant was defendant given Miranda warnings, nor did Deputy Miller ever explicitly ask for consent from defendant to search his vehicle.

Defendant moves to suppress the evidence, arguing that the government has not met its burden of proving that defendant implicitly consented to the search of his residence and vehicle. Defendant argues that the totality of the circumstances does not show consent, but merely acquiescence to a show of authority. Defendant also contends that his intoxication level precludes a finding of valid consent. The government counters that defendant, despite his intoxication, was sufficiently competent to give consent, and he implicitly did so by voluntarily surrendering his car keys to Deputy Miller.[2] The government also argues that, as an alternative, the search was lawful because Deputy Miller possessed probable cause to conduct a

---

[2] The government notes that it does not intend to introduce the holster and ammunition at trial, (ECF No. 24), and thus the issue before the court is the lawfulness of Deputy Miller's search of defendant's vehicle and her recovery of the firearm inside the vehicle.

4

warrantless search of defendant's vehicle once defendant informed her that he was a convicted felon and possessed a firearm in his vehicle. As to this alternative grounds for upholding the search, defendant replies that because the vehicle was within the curtilage of his residence, the warrant exception to vehicle searches should not apply here.

## II. Analysis

### A. Consent to the Search

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (citations omitted). The essence of consent is that it is "freely and voluntarily given," id. at 222, though the government need not show that a defendant knew of his right to refuse to consent to a search. Id. at 227. Consent need not be explicit - consent may be implied from a person's words, gestures, or conduct. See, e.g., United States v. Hylton, 349 F.3d 781, 786 (4th Cir. 2003). The key inquiry to implied consent is whether, based on the totality of the circumstances,

5

defendant's conduct "'would have caused a reasonable person to believe that he consented.'" United States v. Harvey, 901 F. Supp. 2d 681, 693 (N.D.W. Va. 2012) (quoting United States v. Castellanos, 518 F.3d 965, 969-70 (8th Cir. 2008)).

The burden of proving that consent was freely and voluntarily given falls on the government to show by a preponderance of the evidence. Bustamonte, 412 U.S. at 222. "'This burden is heavier where consent is not explicit, since consent is not lightly to be inferred.'" United States v. Moreland, 437 F.3d 424, 429 (4th Cir. 2006) (quoting United States v. Impink, 728 F.2d 1228, 1232 (9th Cir. 1984)).

Here, it is clear that defendant consented to the search of his vehicle by voluntarily giving his car keys to Deputy Miller. The conversation between Deputy Miller and defendant established that defendant possessed a firearm and that it was in his truck. Then, when Deputy Miller asked where the keys to the truck were, defendant voluntarily located and handed over the keys to Deputy Miller. The court finds no evidence that defendant's action in giving his keys to Deputy Miller was the product of duress or coercion. A reasonable person viewing the situation would believe that, by handing his keys over to Deputy Miller without any evidence that she demanded or coerced him to do so, defendant was consenting to her using his keys to unlock the truck and search in the tool bag he had said his gun was stored

in. Thus, this is precisely the kind of non-verbal conduct that demonstrates consent. See United States v. Jones, 356 F.3d 529, 534 (4th Cir. 2004) (citing with approval the holding in United States v. Gordon, 173 F.3d 761, 766 (10th Cir. 1999), that by voluntarily handing over his keys, defendant consented to a search of a locked container).

Defendant's intoxication presents a potentially complicating factor; however, a review of decisions by the Courts of Appeals shows widespread agreement that intoxication alone does not render consent invalid. See, e.g., United States v. Montgomery, 621 F.3d 568, 572-73 (6th Cir. 2010); United States v. Watters, 572 F.3d 479, 483 (8th Cir. 2009); United States v. Madiedo, 972 F.2d 1345 (9th Cir. 1992); United States v. Patrone, 948 F.2d 813, 815-16 (1st Cir. 1991); United States v. Bertram, 805 F.2d 1524, 1526-28 (11th Cir. 1986); United States v. Gay, 774 F.2d 368, 377 (10th Cir. 1985). Instead, courts have inquired as to whether a person's level of intoxication was such that their consent could no longer be deemed to have been freely and voluntarily given. See Gay, 774 F.2d at 377 ("The issue squarely put is whether [defendant] was so intoxicated that his consent to search was not the product of a rational intellect and a free will"); see also Montgomery, 621 F.3d at 572 (explaining that "impairment, moreover, is a matter

7

of degree, making it appropriate to gauge the impact of [intoxication] on a case-by-case basis").

Upon reviewing the record and hearing the testimony of Deputy Miller, the court finds that defendant was not so intoxicated that his consent was not freely and voluntarily given. Deputy Miller testified that defendant was not slurring his speech and that he was responsive to her questions. See id. ("consent can be given . . . when that person is coherent and fails to exhibit any visible impairment"); Gay, 774 F.2d at 377 (being rational enough to understand requests and responsively answer questions is a sign that intoxication did not preclude free and voluntary consent). She also testified that at no point in their encounters at his residence that day did defendant become physically ill or become unsteady and fall due to his intoxication. See Montgomery, 621 F.3d at 572 (citing United States v. Fletcher, 295 Fed. App'x 749 (6th Cir. 2008), as upholding consent to search where defendant did not seem impaired and was not swaying or unsteady). Because the evidence demonstrates that defendant understood what was happening, did not exhibit physical manifestations of significant intoxication, and was coherent and responsive to questions, his consent to Deputy Miller's search of his truck was freely and voluntarily given.

For these reasons, the court concludes that the firearm seized pursuant to Deputy Miller's search of defendant's vehicle should not be suppressed because defendant consented to the search.

**B. Probable Cause for a Warrantless Search of the Vehicle**

As an alternative ground for the validity of the search, the court also finds that Deputy Miller had probable cause to search defendant's vehicle. Probable cause "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996). Although most searches require a warrant, warrantless searches of automobiles are valid under the automobile exception to the warrant requirement: "where there was probable cause to search a vehicle 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained.'" Maryland v. Dyson, 527 U.S. 465, 467 (1999) (quoting United States v. Ross, 456 U.S. 798, 809 (1982)). Here, Deputy Miller clearly possessed probable cause once she learned that defendant was a felon and possessed a firearm inside of his vehicle. See, e.g., United States v. Gardner, 2013 WL 6859280, at *2 (E.D.N.C. Dec. 30, 2013), aff'd, 823 F.3d 793 (4th Cir. 2016) (holding that "there was probable cause to

9

believe that Defendant's vehicle contained contraband when Defendant admitted that he was a convicted felon 'several times' and had a firearm under the driver's side of the front seat of the vehicle"); cf. United States v. Coleman, 700 F.3d 329, 336 (8th Cir. 2012) (finding probable cause to search a vehicle when a defendant admitted there were drugs in his car).

Defendant argues that the automobile exception to the warrant requirement does not extend to vehicles parked in the curtilage of the home.  Defendant is correct about this limit of the automobile exception.  See Collins v. Virginia, 138 S. Ct. 1663, 1671-72 (2018) (holding that "[n]othing in our case law . . . suggests that the automobile exception gives an officer the right to enter a home or its curtilage to access a vehicle without a warrant").  However, defendant's argument is irrelevant to this case because the evidence shows that defendant's vehicle was not located within the curtilage of his home.  Instead, defendant's truck was parked on a gravel area slightly to the side of a public street in front of his home. (See ECF No. 27, Exs. D-1 and D-2.)  It is clear that "a public street can never fall within a home's curtilage." United States v. Hernandez, 647 F.3d 216, 219 n.3 (5th Cir. 2011); see also United States v. Thompson, 2005 WL 8159515, at *5 (C.D. Cal. Sept. 30, 2005) (finding that a car parked on the street was outside the curtilage, while a car parked in the backyard was

10

within the curtilage of defendant's home).  Nor does the fact that defendant's truck was parked on a gravel driveway – which was mere feet to the side of the street – change this analysis.

A cursory review of curtilage doctrine supports this rule.  The curtilage "is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, and therefore has been considered part of the home itself for Fourth Amendment purposes." Oliver v. United States, 466 U.S. 170, 180 (1984).  In determining if an area is part of the curtilage, we consider: (1) "the proximity of the area claimed to be curtilage to the home"; (2) "whether the area is included within an enclosure surrounding the home"; (3) "the nature of the uses to which the area is put"; and (4) "the steps taken by the resident to protect the area from observation by people passing by." United States v. Dunn, 480 U.S. 294, 301 (1987).

Analyzing the factors as applied to this case, the area in which defendant's truck was parked was beyond the steps leading from the home to the street, and the area is far more similar to the street than an area of the home.  The area was not included in any enclosure, and would be available for any person to park their car, not just defendant; this is a strong factor showing the area is much more analogous to street parking rather than an enclosed driveway adjacent to or part of the home.  Moreover, no

11

steps had been taken to limit the area from observation by passers-by: the truck and the parking area were not only easily visible by persons driving or walking on the public street, but the truck was within arms-reach of an person walking by on the street. Therefore, the court finds that the area where defendant's car was located does not fall within the curtilage of the home. As such, the automobile exception to the warrant requirement is applicable in this case, and Deputy Miller possessed probable cause to search defendant's vehicle without a warrant.

For these reasons, the court concludes that, as an alternative ground, the firearm seized pursuant to Deputy Miller's search of defendant's vehicle should not be suppressed because the search was conducted with probable cause and within the automobile exception to the Fourth Amendment's general warrant requirement.

### III. Conclusion

Deputy Miller's search of defendant's vehicle was lawful because it was conducted pursuant to valid consent and, alternatively, because it was conducted with probable cause under the automobile exception to the warrant requirement. For the foregoing reasons, the firearm seized pursuant to Deputy Miller's search should not be suppressed, and defendant's motion to suppress, (ECF No. 23), is **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record, the United States Marshal for the Southern District of West Virginia, and the Probation Office of this court.

IT IS SO ORDERED this 28th day of August, 2020.

**ENTER:**

*/s/ David A. Faber*
David A. Faber
Senior United States District Judge